FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB -8 PM 3: 13

LORETTA G. WHYTE
       CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LUZ NUNEZ                                CIVIL ACTION

versus                                   NO. 00-0386

B. H. MILLER, ET AL                      SECT. F, MAG. 3

### PRE-TRIAL ORDER

1. **PRE-TRIAL CONFERENCE**

   The pre-trial conference is scheduled for **February 8, 2001** at **1:45 p.m.** before the Honorable Martin Feldman, United States District Judge.

2. **COUNSEL**

   A.  For the Plaintiff:

       GARY W. BIZAL
       La. Bar Roll #1255
       PIERCE & BIZAL
       Entergy Corporation Building
       639 Loyola Avenue, Suite 1820
       New Orleans, LA 70113
       (504)525-1328

   B.  For the Defendants:

       W. J. LeBLANC, JR.
       La. Bar Roll #1800
       MOLAISON & LeBLANC
       603 Lafayette Street
       Gretna, LA 70053
       (504)367-0373

DATE OF ENTRY
FEB - 8 2001

Fee_____
Process____
X Dkd_____
CtRmDep__3__
Doc.No._____

3.  **PARTIES**

   **PLAINTIFF:**

   1)  Luz Nunez, a citizen of the United States residing in the Eastern District of Louisiana.

   **DEFENDANTS:**

   2)  B. H. Miller, Jr. in his capacity as Police Chief is a competent major domiciled in the Eastern District of Louisiana.

   3)  Gerald Lacour, individually and in his official capacity as a police officer is a competent major domiciled in the Eastern District of Louisiana.

4.  **JURISDICTION**

   a.  Jurisdiction is vested in this court by Title 28, United States Code, Sections 1331 and 1334 and Title 42 United States Code, Section 1983. Pendant jurisdiction is asserted for all claims cognizable under the laws of the State of Louisiana. Jurisdiction is not contested.

5.  **PENDING OR CONTEMPLATED MOTIONS**

   The defendants will be filing a Motion to Strike Dawanda Barnes as a witness.

6.  **MATERIAL FACTS**

   a. **PLAINTIFF:**

   On February 13, 1999 at approximately 1:30 a.m., the plaintiff, LUZ NUNEZ, was present with a number of her friends at the Seaview Club in Gretna. While in the Club, a fight ensued between some unknown individuals and friends of the plaintiff. Ms. Nunez attempted to stop the fight and was successful in doing so. Shortly thereafter the defendant, Officer Lacour, entered the lounge and approached the plaintiff. He accursed her of being

involved in the fight, grabbed her arm and twisted it between her back, and attempted to push her out of the club. The plaintiff advised Officer Lacour that she had not been involved in the fight but he ignored her statements and pursued her outside. As they approached the inner door to the club, Officer Raymond Lasseigne grabbed the plaintiff and assisted Officer Lacour in dragging her out of the bar. Once outside, Officer Lacour lifted the plaintiff and then threw her onto the police car. He punched her in the back and in the chest. Ultimately, he put his thumb behind her ear and pushed her face onto the hood of the car.

The plaintiff was charged with violation of three Gretna Ordinances, 16-114 disturbing the peace; 16-65 resisting an officer and 16-65.5 battery on an officer.

It is the plaintiff's contention that the defendant, Officer Lacour, failed to conduct any investigation prior to grabbing and dragging her out of the club. She was clearly under arrest at that point in time. The defendant had no trustworthy information that the plaintiff had committed any offense or was about to commit one. Officer Lacour's manhandling of the plaintiff as he drug her through the bar and out the front door justified her minor resistance which consisted of struggling and pulling away from the defendant. At that point in time, the arrest was unlawful. It is perfectly justifiable to resist an unlawful arrest. It is a protection guaranteed citizens as part of the guarantee against

unreasonable seizures of a person by the Fourth Amendment to the United States Constitution.

The actions of the defendant, Officer Lacour, in manhandling the plaintiff resulted in numerous bruises to the plaintiff's back, chest, arm, head and face. There was no justification for his behavior given the fact that he had no probable cause to arrest the plaintiff.

Following her arrest the plaintiff was transported to Jefferson Parish Lockup.

The force used by the defendant, Officer Lacour, in this case was excessive. Photographs reflecting the bruising on the plaintiff's body reflect the amount of force Officer Lacour utilized.

The plaintiff pled guilty in Gretna City Court to disturbing the peace. The other two charges, resisting an officer and battery on an officer were dismissed.

It is the plaintiff's contention that she was charged with resisting an officer and battery on an officer to explain the numerous bruises on her body. Her actions, if they can even be construed as resisting an officer, which is not admitted, were justifiable under the circumstances.

Because the plaintiff pled guilty to the charge of disturbing the peace she is not claiming an illegal arrest. She is, however, claiming excessive force used by Officer Lacour in connection with

his arrest.

The day following her arrest, the plaintiff was seen at East Jefferson General Hospital. She was treated by Dr. Gerald Cvitanovich. In connection with her treatment at EJGH she incurred an emergency room bill totaling $461.50.

During her arrest, gold earrings were lost as well as a pager. The gold earrings were valued at $60.00 and the pager at $55.00.

The defendant, Officer Lacour, has a history of using excessive force. He previously beat up Dawanda Barnes in connection with her arrest. The defendant, B. H. Miller, failed to take any action to discipline Officer Lacour for the use of excessive force in connection with the arrest of Dawanda Barnes. The defendant, B. H. Miller, is also liable to the plaintiff under state law for failing to take action against Officer Lacour in the form of retraining or discipline to prevent future use of excessive force.

b.   **DEFENDANTS:**

On February 13, 1999 at approximately 2:00 a.m., Officer Gerald Lacour, a five-year veteran of the Gretna Police Department, was working a paid detail at the Seaview Club, a Gretna lounge, which had an Hispanic clientele. Officer Lacour and Officer Raymond Lasseigne were standing outside of the club when someone opened the door, came outside and said that there was a fight

inside. Officer Lacour went into the club, where 50-75 people were present and saw Ms. Nunez "scurrying through the crowd... Kind of knocking into people, trying not to be seen as I took it." Officer Lacour approached her, she became irate, he advised that she jerked away from me, began yelling obscenities, advised me she was with the New Orleans Police Department and I couldn't do anything. Just screaming, causing a disturbance. At that point, she was advised that she was under arrest.

Officer Lacour placed her in a transport wrist lock and attempted to get her outside into a safer environment for handcuffing. She continuously pulled and screamed and generally resisted. As Officer Lacour came to the inner door to the lounge, Ms. Nunez kneed Officer Lacour in the groin. Officer Lasseigne, at the time, came into the club and took one arm. Officer Lacour took the other arm and they escorted the still struggling Nunez outside. Once outside the club, they brought her to the police unit approximately ten feet away.

Once at the car, she continued to kick, scream and resist and refused to comply with the officer's verbal commands to stop resisting. She had locked her arms in front of her, refusing to be handcuffed. People in the lounge were coming outside when Officer Lasseigne broadcast an officer needs assistance call because it was starting to be a dangerous situation. Following Nunez's refusal to respond to loud verbal commands to stop resisting, Officer Lacour

put his thumb behind her ear in a mandibular angle technique, which is an accepted and customary pain compliance technique. As Officer Lacour stated, "We tried using the absolute minimal amount of force to get her handcuffed, and just nothing worked." The only other use of force that was necessary to keep Nunez on the police unit as she continued to try to come off of the police unit.

About this time, Officer Martin Schmidt arrived and observed Nunez on the police car struggling with Lacour and Lasseigne on each arm. Officer Schmidt was able to use his handcuffs to cuff Nunez with the assistance of the other two officers. She was placed in a transporting officer's police unit without further incident. She was charged with disturbing the peace, resisting arrest and battery on a police officer.

Ms. Nunez, represented by counsel, appeared in Gretna City Court and pleaded guilty to the charge of disturbing the peace. As part of the plea agreement, the City dismissed the other two charges. The police acted reasonably and with minimum force in responding to a disturbance call and in effecting the arrest of the plaintiff.

7. **UNCONTESTED FACTS**

   A. Luz Nunez was arrested by Officer Gerald Lacour on February 13, 1999 at 2105 Hancock Street in Gretna, the Seaview Lounge.

   B. The plaintiff, Luz Nunez, was charged with disturbing the peace, resisting arrest and battery on police officer.

   C. At all time pertinent herein, Officer Lacour was acting

    under color of state law and within the course and scope of his employment with the City of Gretna.

  D. The plaintiff appeared in Gretna City Court represented by counsel and pled guilty to disturbing the peace, following which the other charges were dismissed.

8. **CONTESTED FACTS**

  A. Whether the plaintiff resisted arrest.

  B. Whether the plaintiff was justified and used only reasonable force in resisting arrest.

  C. Whether the defendant utilized excessive force when arresting the plaintiff.

  D. Whether the plaintiff battered Officer Lacour.

  E. The amount of special damages, if any, to be awarded to the plaintiff.

  F. The amount of punitive damages to be awarded, if any.

  G. Whether the plaintiff was the victim of a battery under state law.

  H. Whether the defendant, B. H. Miller, is liable to the plaintiff under the theory of respondeat superior for the actions of his employee, Gerald Lacour.

  I. Whether the defendant, Gerald Lacour, is liable to the plaintiff for any violations of her civil rights.

  J. Whether reasonable force was exercised was utilized by Officer Lacour in making his arrest of the plaintiff.

9. **CONTESTED ISSUES OF LAW**

  A. Whether plaintiff's civil rights were violated.

  B. Which of the defendants are liable to the plaintiff under state law.

  C. Whether the defendant, Lacour, is liable to the plaintiff for violating her civil or constitutional rights.

  D. Whether the Court will exercise its jurisdiction over the

        state tort claims.

   E.    Whether the actions of the defendant, Gerald Lacour, was sufficient and malicious to entitle the plaintiff to punitive damages.

   F.    Whether the plaintiff is entitled to recover attorney's fees if she prevails against Gerald Lacour in connection with the allegation of excessive force.

   G.    Whether there was probable cause to arrest the plaintiff for resisting arrest and battery on a police officer.

   H.    All legal issues inherent in the previously listed statement of material and contested facts.

10.  **EXHIBITS**

   **PLAINTIFF:**

The plaintiff may introduce the following exhibits without objection at the trial of the above captioned matter:

   A.    Medical records from East Jefferson General Hospital Emergency Room.

   B.    Medical Bill from East Jefferson General Hospital.

   C.    Affidavit of Probable Cause.

   D.    Police report prepared by Officer Lacour.

   E.    Summons issued to Carlos Mejea.

   F.    Communications records from Gretna Police Department.

   G.    Health Screening Intake Form prepared by Jefferson Parish Sheriff's Office.

   H.    Any and all responses to discovery.

   I.    Photographs of plaintiff depicting her injuries.

   J.    Any exhibit listed or introduced by any other party.

   **DEFENDANTS:**

   A.    Medical records of East Jefferson Hospital Emergency Room

    from the day of plaintiff's arrest.

   B. Any exhibit listed or introduced by any other party.

11. **DEPOSITION TESTIMONY**

   **PLAINTIFF:**

   The plaintiff will introduce the deposition of Dr. Gerald Cvitanovich.

   **DEFENDANTS:**

   At this time, counsel for defendant does not anticipate using any deposition transcript in lieu of live testimony. However, should any witness who has been deposed become unavailable for trial, defendants reserve the right to submit the witnesses' deposition at trial.

12. **GRAPHS, CHARTS, MODELS**

   None at this time on behalf of either party.

13. **WITNESSES**

   **PLAINTIFF:**

   A. Luz Nunez - 2216 Athania, Metairie, LA 70001 - facts and circumstances of her arrest and the injuries she sustained;

   B. Roxanna Tejeda - 6215 Ackel Street, Apt. 119C, Metairie, LA 70003 - will testify that they were at the Seaview Club and witnessed the arrest of the plaintiff;

   C. Jessie Oro - 5031 Yale Street, Apt. 3, Metairie, LA 70006 - will testify that they were at the Seaview Club and witnessed the arrest of the plaintiff;

   D. Dr. Gerald Cvitanovich - EJGH, 4200 Houma Blvd., Metairie, LA 70006 - Emergency room physician who will testify regarding his findings upon examination of the plaintiff as well as the history she provided.

   E. Dawanda Barnes - 752 Carrollwood Village Drive, Apt. 234, Terrytown, LA 70056 - will testify that she was previously arrested and beaten by the defendant, Gerald Lacour.

     F.    Any person listed or called by any other party.

**DEFENDANTS:**

     A.    Gerald Lacour, facts and circumstances of plaintiff's arrest;

     B.    Plaintiff, under cross-examination.

     C.    Raymond Lasseigne, facts and circumstances of plaintiff's arrest.

     D.    Martin Schmidt, facts and circumstances of plaintiff's arrest.

     E.    Douglas Zemlik, facts and circumstances of plaintiff's arrest.

     F.    Dr. Gerald Cvitanovich medical examination of plaintiff.

     G.    Jesse Oro, facts and circumstances of plaintiff's arrest.

     H.    Any person listed or called by any other party.

The witness lists were filed in accordance with prior court orders.

14. **JURY INSTRUCTIONS**

This is a bench trial.

15. **LIABILITY**

The issue of liability will not be tried separately from that of quantum.

16. **MATTERS TO EXPEDITE HANDLING OF CLAIM**

The parties believe a settlement conference may assist in the resolution of this claim.

17. **TRIAL**

Trial shall commence the week beginning Monday, February 20, 2001 at 9:00 a.m. before the District Judge without a jury. The trial is estimated to last two days.

18. **STATEMENT**

    This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19. **SETTLEMENT POSSIBILITY**

    The possibility of settlement of this was considered.

20. **SIGNATURES**

BY: _/s/ Gary W. Bizal_  
GARY W. BIZAL #1255  
639 Loyola Avenue  
Suite 1820  
New Orleans, LA 70113  
(504)525-1328  
Attorney for Plaintiff

BY: _/s/ W.J. LeBlanc Jr._  
W.J. LeBLANC, JR. #1800  
603 Lafayette Street  
Gretna, LA 70053  
(504)367-0373  
Attorney for Defendants

_/s/ Martin L. C. Feldman_  
UNITED STATES DISTRICT JUDGE